L. H. WALL v. COLVARD, INC.

(Filed 26 August, 1966.)

**1. Appeal and Error § 38—**

Assignments of error not brought forward in the brief are deemed abandoned.

**2. Appeal and Error § 22—**

In the absence of objection or exception to the admission or exclusion of evidence, findings of fact which are supported by the evidence must be sustained.

**3. Chattel Mortgages and Conditional Sales § 2—**

Where at the time of the execution of a chattel mortgage the mortgagor owns merchandise and equipment on the premises at a specified location, a chattel mortgage listing the chattels by quantity, as "one cigarette machine; two cold drink machines;" etc., and covering "also, all merchandise, supplies and equipment now located" at the designated business address, is held to identify the property with sufficient certainty.

**4. Chattel Mortgages and Conditional Sales § 15—**

Upon default, the chattel mortgagee is entitled to possession of the property.

**5. Trover and Conversion § 1; Claim and Delivery § 6—**

Where the holder of a junior chattel mortgage seizes the property under claim and delivery and refuses the demand for the surrender of the property by the holder of a senior registered chattel mortgage in default, there is a conversion of the property by the junior mortgagee, and the senior mortgagee is entitled to recover from him the value of the property at the time of its conversion, with interest.

**6. Trover and Conversion § 1—**

After an act of conversion has become complete, an offer to return or restore the property by the wrongdoer does not bar an action for conversion.

**7. Corporations §§ 1, 6—**

    Acquisition of the entire capital stock of a corporation by one person does not affect the corporate entity, and the execution in the name of the corporation by such person of a chattel mortgage is a corporate act and binding, provided the rights of its then existing creditors are not affected. G.S. 55-3.1.

APPEAL by defendant from *McLean, J.*, September 1965 Session of CALDWELL.

Action for conversion. The parties waived a jury trial. Both plaintiff and defendant offered evidence which presents a confused picture of the events culminating in this action. Except as indicated, however, it seems to be without material conflict. It tends to show:

Sometime prior to January 1961, plaintiff, his son W. F. Wall, and Clyde Nelson formed the corporation denominated "Wall & Nelson, Inc." for the purpose of operating a service station for the sale of Phillips 66 gasoline and associated products. Of the one hundred shares of stock issued, plaintiff, his son, and his son's children owned all but five, which plaintiff had turned over to Nelson so that he could be an officer of the corporation. Nelson himself never invested any money in the corporation. He was, however, its vice-president and the operator of the business. Plaintiff, who was president, Nelson, and W. F. Wall constituted the board of directors. The business was conducted upon premises leased by Wall & Nelson, Inc. from defendant Colvard, Inc., a wholesale distributor of Phillips 66 products. As a result of Nelson's poor management, the business of Wall & Nelson, Inc. was operated at a loss. On November 1, 1961, plaintiff and his family sold Nelson their stock in the corporation for $7,400.00, and all the officers and directors other than Nelson resigned. Thereafter Nelson remained the sole stockholder in the corporation.

To enable Nelson to purchase the Wall stock, R. W. Colvard, president of defendant corporation, "gave him a note." The "understanding was he paid Mr. Wall" and that Colvard would carry the note until the following spring. Plaintiff has collected the $5,000.00 due him from the proceeds of this note, but Nelson has not paid the note for $1,200.00 which he executed and delivered to plaintiff for the balance of the purchase price. Although the record is far from explicit on this point, we deduce that the note which Colvard "gave" Nelson may have been the note which Nelson executed to First Union National Bank of Lenoir on January 1, 1962, in the amount of $5,486.00, and which defendant Colvard probably endorsed. In any event, defendant is now the assignee of this note.

In January 1961, plaintiff had advanced Wall & Nelson, Inc. approximately $6,000.00 to pay for merchandise. In August 1961, he

had advanced it about $2,400.00 more to pay taxes, meet payrolls, etc. Plaintiff made these loans to the corporation upon the understanding that it was to secure these loans by a chattel mortgage on its assets. At the time Nelson became the owner of all the stock in the corporation, this chattel mortgage had not been executed, and the corporation owed plaintiff $8,874.34. Upon plaintiff's request, on November 3, 1961, Wall & Nelson, Inc., "by Clyde H. Nelson, vice-president," executed and delivered to plaintiff a chattel mortgage, in usual form, to secure the corporation's note for $8,874.34, due 90 days after date. It conveyed to plaintiff the following described personal property:

> "One Ford pickup truck
> One cigarette machine
> Two cold drink machines
> Cigarette vending machine
> Coffee vending machine
> Cash register
> Show case
> Small tools
> A quantity of batteries
> A quantity of tires
> A quantity of tire chains
> A quantity of oil

> "Also, all merchandise and supplies and equipment now located at the Phillips 66 buildings at the intersection of East Harper Avenue and the South By-Pass" in Caldwell County.

The mortgage likewise covered "all new merchandise purchased by the corporation for use in its business." At the time the chattel mortgage was executed, the corporation owned only one Ford pick-up truck, one cigarette machine, two cold drink machines, one cash register, one coffee vending machine, and one show case. It was duly filed for registration in the office of the Register of Deeds of Caldwell County on November 3, 1961..

Neither Nelson, nor anyone for him, ever made a payment on this chattel mortgage. When the mortgage became due on March 3, 1962, plaintiff made no attempt to foreclose, because Nelson was then paying on the Colvard note for the purchase price of the stock, and, when that was paid off, plaintiff expected him to begin paying off the chattel mortgage.

As security for the note in the amount of $5,486.00 which Nelson executed to the First Union National Bank of Lenoir, presum-

ably to enable him to buy plaintiff's stock, Nelson and wife, as individuals, executed and delivered a chattel mortgage on the merchandise and equipment in the filling station in question. This mortgage was recorded on January 27, 1962. (This note and chattel mortgage were not introduced in evidence.) With reference to this transaction, Mr. Colvard, who owns "practically all the stock (in defendant corporation)," dealt with "Clyde Nelson rather than Wall & Nelson, Inc." Although Colvard knew of the existence of Wall & Nelson, Inc., he did not examine the grantor index of chattel mortgages in the Register of Deeds office to see whether this corporation had previously mortgaged the personal property in question. His record examination of mortgages given by Nelson and wife failed, of course, to reveal the prior chattel mortgage which Wall & Nelson, Inc. had given to plaintiff on the same property.

After Nelson purchased all the stock in Wall & Nelson, Inc., he managed the service station as an individual operator for defendant, which sold him gas, oil, and some tires on consignment. He was supposed to pay defendant weekly as he sold these products. On September 12, 1962, however, Nelson owed defendant $5,000.00-$6,000.00, and the only security it' had was the note for $5,486.00 and the chattel mortgage on the filling station merchandise, supplies and equipment which had been recorded subsequent to plaintiff's mortgage. In order to evict Nelson from the filling station, defendant, on September 12, 1962, instituted an action on the note and took claim and delivery for "all merchandise and equipment in the Phillips 66 station at #518 East Harper Street, Lenoir, North Carolina." In the affidavit, Mr. Colvard averred that the actual value of the property taken was $5,000.00. The sheriff of Caldwell County served the summons and other papers in the claim and delivery proceeding upon Nelson and took possession of the merchandise and equipment at the service station, including the Ford truck, cash register, two cold drink machines, and the coffee machine. At the time, he made a detailed inventory of the merchandise and equipment which covers 17 pages of the record.

While the sheriff was inventorying the property, plaintiff's son, W. F. Wall, came to the service station and informed defendant's agent, Mr. Wilfong, who was assisting the sheriff, that plaintiff had a first mortgage on all the stock of goods and equipment. Wilfong replied that a title search had not revealed any such mortgage. In the meantime, Nelson had taken the papers which the sheriff had served upon him to plaintiff, who immediately called defendant's attorney of record, Mr. Ted G. West, informed him of his recorded mortgage, and demanded that he release the property. Mr. West refused, but stated that if plaintiff did have a prior recorded mort-

gage, defendant would pay it off. At that time, plaintiff did have a first lien on all the property included in his mortgage except the cash register, which was subject to a purchase-money lien in the amount of $400.00. After holding the property for three days, no replevin bond having been filed, the sheriff delivered the property to defendant.

Plaintiff's evidence tended to show that the wholesale value of the property which the sheriff seized was $8,900.00-$8,977.00. Defendant's evidence tended to show that it was worth only $1,500.00-$2,500.00. In November 1962, defendant offered to give the property still in his possession to plaintiff or to Nelson. Both refused this offer. On August 25, 1965, defendant's action against Nelson and wife was nonsuited by the court because of the failure of Colvard, Inc. to appear to prosecute it.

Judge McLean made findings of fact which are summarized as follows:

1. Plaintiff is the owner and holder of a note and chattel mortgage in the amount of $8,874.34, executed by Wall & Nelson, Inc. on November 3, 1961, filed for record on the same day in the office of the Register of Deeds of Caldwell County.

2. On September 12, 1962, this note and chattel mortgage were in default.

3. On that day, the items embraced in plaintiff's chattel mortgage were seized by the sheriff under claim and delivery proceedings instituted by defendant, and were thereafter delivered to defendant.

4. On September 12, 1962, plaintiff demanded of defendant the possession of these articles of personal property, and defendant refused to deliver them.

5. Plaintiff's chattel mortgage was properly executed by Wall & Nelson, Inc., with the authority of its board of directors, and delivered to plaintiff for valuable consideration.

6. Defendant has retained possession of the property in question.

7. The value of the property at the time it was seized by defendant was $7,130.00, but defendant is entitled to a credit of $800.00 for the cash register which plaintiff has recovered.

Upon these findings Judge McLean concluded as a matter of law that, at the time defendant took possession of the property under claim and delivery, plaintiff was entitled to its immediate possession; that when defendant refused to deliver the property to plaintiff upon his demand, defendant converted the property; that plaintiff is entitled to recover of defendant the sum of $6,330.00.

Defendant excepted to findings of fact 2 through 6, and to each conclusion of law, and appealed from the judgment entered.

*Seila, Wilson & Palmer by W. C. Palmer for plaintiff appellee.*
*Ted G. West; Ferree & Brewer by Joe Brewer for defendant appellant.*

SHARP, J.   Defendant assigns as error only the findings of fact and conclusions of law contained in the judgment. Assignments of error 1 through 6 are based upon findings of fact 2 through 7. Assignment of error No. 4 to finding of fact No. 5 is not brought forward in the brief and is, therefore, deemed abandoned. *Cotton Mills v. Local, 584,* 251 N.C. 234, 111 S.E. 2d 476. Assignments of error 1, 2, 3, 5, and 6 challenge only the sufficiency of the evidence to support those findings. Since there were no objections or exceptions to the admission or exclusion of evidence, if the evidence supports the findings of fact, they must be sustained. 1 Strong N. C. Index, Appeal and Error § 22 (1957).   As the statement of facts clearly reveals, findings 2, 3, 4, 6, and 7 (those which defendant now assigns as error) are fully supported by the evidence, and they, together with findings 1 and 5, clearly support the conclusions of law.

Defendant, whose chattel mortgage was recorded about three months after plaintiff's, is the junior mortgagee. The description of the property listed in the chattel mortgage, when considered in connection with the evidence that Wall & Nelson, Inc. owned only one Ford truck, one cigarette machine, two cold drink machines, one cigarette vending machine, one coffee vending machine, one cash register, one show case, and the further evidence that all the property was on the service station premises at a specified location, meets identification requirements of the law. *Peek v. Trust Co.,* 242 N.C. 1, 86 S.E. 2d 745. *Cf. Forehand v. Farmers Co.,* 206 N.C. 827, 175 S.E. 183. The quantity is the *entire* stock, and there was only one business and stock in trade owned by the mortgagor located at the intersection of East Harper Street and the South By-Pass in Caldwell County. "The slightest inquiry would have enabled a third party to identify the property intended to be montgaged." *In re Coleman & Brown,* 2 Fed. 2d 255 (5th Cir.). Plaintiff, the senior mortgagee whose mortgage was in default, was entitled to the possession of the property. *Rea v. Credit Corp.,* 257 N.C. 639, 127 S.E. 2d 225.

A junior mortgagee who seizes the mortgaged property and holds it against the senior mortgagee is liable in an action by the senior mortgagee for the conversion of the property. *Credit Corp. v. Satter-*

*field,* 218 N.C. 298, 10 S.E. 2d 914; *Foy v. Hurley,* 172 N.C. 575, 90 S.E. 582; *Grainger v. Lindsay,* 123 N.C. 216, 31 S.E. 473; 15 Am. Jur. 2d, Chattel Mortgages § 183 (1964); 14 C.J.S., Chattel Mortgages §§ 229, 248 (1939); Annot., Chattel Mortgages — Junior Mortgagee, 43 A.L.R. 395 (1926). Conversion is " 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.' " *Peed v. Burleson's, Inc.,* 244 N.C. 437, 439, 94 S.E. 2d 351, 353. "Withholding the posession from the plaintiff, under a claim of title inconsistent with his own" is a conversion. *University v. Bank,* 96 N.C. 280, 3 S.E. 359. Plaintiff, having alleged and shown his title to the property seized by the sheriff at defendant's instance, *Vinson v. Knight,* 137 N.C. 408, 49 S.E. 891, is entitled to recover the value of the property at the time and place of its conversion, with interest.

After an act of conversion has become complete, an offer to return or restore the property by the wrongdoer will not bar the cause of action for conversion. *Stephens v. Koonce,* 103 N.C. 266, 9 S.E. 315; 89 C.J.S., Trover and Conversion § 86 (1955).

The arguments in defendant's brief are directed to the sufficiency of plaintiff's chattel mortgage and the authority of Nelson to execute it. Although the assignments of error do not present these questions, it is noted that at the time Nelson, as vice-president of Wall & Nelson, Inc., executed and delivered to plaintiff the chattel mortgage in question, Nelson was the sole stockholder, director, and officer of the corporation. The existence of the corporation was not imperiled by Nelson's acquisition of all its stock. G.S. 55-3.1. It might be argued, with logic, that his act was the corporation's act. See Latty, *A Conceptualistic Tangle and the One- or Two-Man Corporation,* 34 N. C. Law Rev. 471 (1956). See also G.S. 55-36(b). In a number of jurisdictions "the sole stockholder or the stockholders by unanimous action may do as they choose with the corporation's assets provided the interest of its creditors are not affected." 18 Am. Jur. 2d, Corporations § 487 (1965) and cases therein cited. So far as the record discloses, except for the conditional vendors of the cash register and truck, plaintiff was the corporation's only creditor at the time the mortgage in suit was given.

The judgment of the court below is
Affirmed.